**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
AUDREY ROBERTS,

                              Plaintiff,

         -against-

PIER A BATTERY PARK ASSOCIATES, LLC and
ALEXANDRA CASSITTO, *Individually*,

                           Defendants.

------------------------------------------------------------------X

Case No.

**COMPLAINT**

**PLAINTIFF DEMANDS**
**A TRIAL BY JURY**

       Plaintiff, by her attorneys, PHILLIPS & ASSOCIATES, PLLC, upon information and belief, complains as follows:

## NATURE OF THE CASE

1.     Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); 42 U.S.C. § 1981; the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"); the New York State Human Rights Law, New York State Executive Law § 296 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, Administrative Code § 8-107 *et seq.* ("NYCHRL"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being **Discriminated Against in that she was subjected to a hostile work enviornment due to her Race and/or Color, and terminated unlawfully due to her Age,** by Defendants.

## JURISDICTION AND VENUE

2.     Jurisdiction of this Court is proper under 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, 29 U.S.C. § 626(c), and 28 U.S.C. §§ 1331 and 1343.

3.     The Court has supplemental jurisdiction over Plaintiff's claims brought under state and city law pursuant to 28 U.S.C. § 1367.

1

4.    Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL PREREQUISITES

5.    Plaintiff filed charges of discrimination upon which this Complaint is based with the New York State Division of Human Rights ("NYSDHR"), which cross-filed such charges with the Equal Employment Opportunity Commission ("EEOC").

6.    Plaintiff received a Notice of Right to Sue from the EEOC on Septemeber 26, 2017, with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto.

7.    This Action is being commenced within ninety (90) days of receipt of said Right to Sue.

## PARTIES

8.    At all times material, Plaintiff AUDREY ROBERTS ("Plaintiff") was and a resident of the State of New York.

9.    Plaintiff is a black woman, and was forty-two (42) years of age at the time she was hired by Defendants.

10.   At all times material, Defendant PIER A BATTERY PARK ASSOCIATES, LLC ("PIER A") was and is a foreign business corporation, duly operating pursuant to, and by virtue of, the laws of the State of New York.

11.   At all times material, Defendant PIER A did and does operate a bar and restaurant establishment located at 22 Battery Place, New York, NY 10004 ("Harbor House").

12.   At all times material, Plaintiff was a full time employee of Defendant PIER A and worked as a "Barista" and "Drink Runner" at Harbor House.

13.   Upon information and belief, at all times material, Defendant ALEXANDRA CASSITTO ("CASSITTO") was and is an individual residing in the State of New York.

2

14.     At all times material, Defendant CASSITTO was and is an employee of Defendant PIER A, holding the position of "Food and Beverage Manager."

15.     At all times material, Defendant CASSITTO was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

16.     Defendant PIER A and Defendant CASSITTO are collectively referred to herein as "Defendants."

## MATERIAL FACTS

17.     On or about March 13, 2016, Defendant CASSITTO and Anthony Malone ("Mr. Malone"), a manager employed by Defendant PIER A, hired Plaintiff and Plaintiff began working for Defendant PIER A at Harbor House both as a "Barista" making $12.50 per hour and as a "Drink Runner" making $9.00 per hour plus a percentage of bar sales and a percentage of tips collected by servers.

18.     At the time that Plaintiff was hired, neither Defendant CASSITTO nor Mr. Malone informed or even intimated to Plaintiff that the job she was starting was of limited duration; Plaintiff understood the position to be year-round, full-time, and permanent.

19.     During Plaintiff's employment with Defendants, Plaintiff performed her job in an exemplary manner, receiving no discipline for misconduct or any other reason.

20.     Throughout Plaintiff's employment with Defendants, Plaintiff was regularly scheduled and regularly worked full-time hours, and usually worked more hours per week as a Drink Runner than as a Barista.

21.     In or about the end of August 2016, Plaintiff inquired to Mr. Malone about transitioning to a position that paid a higher hourly rate. Mr. Malone referred Plaintiff to Defendant CASSITTO.

22. Plaintiff then made the same appeal to Defendant CASSITTO, inquiring specifically about a hostess or server position.

23. Defendant CASSITTO responded that she did not want Plaintiff to work shifts as a host *and* server because it may cost Defendant PIER A too much in overtime pay. However, Defendant CASSITTO did offer Plaintiff as many hours as Plaintiff wanted to work as a Drink Runner, earning approximately $9.00 per hour.

24. In the following weeks, Plaintiff did in fact work significant overtime hours as a Drink Runner.

25. Upon information and belief, during the Summer and Fall of 2016, Defendant PIER A paid hosts $12.50 per hour ($3.50 higher than Plaintiff was paid as a Drink Runner) and Servers regularly made over $1,000 per week total from wages and tips (also significantly more than Plaintiff was paid as a Drink Runner).

26. Throughout Plaintiff's employment, Defendants had a practice of treating black employees less well than white employees.

27. Defendants also employed a practice of treating younger employees with more deference than those over forty (40) years of age.

28. One example of Defendants treating black employees less well than white employees involves meal breaks. Defendant PIER A's policy for employee meals allows employees who work double shifts one meal break, with the meal provided by Defendant PIER A.

29. Soon after Plaintiff began working for Defendants, she noticed that she and the other black employees had to repeatedly request their meal breaks, and Defendant CASSITTO insisted the black employees wait until later in the day for their meal breaks, while her white coworkers were not told to wait and sometimes did not even need to ask permission. Worse

yet, on many occasions, Defendant CASSITTO would not allow black employees to take their meal break at all. Plaintiff did not observe Defendant CASSITTO deny her white coworkers their meal breaks outright.

30. In or about November 2016, Plaintiff responded to a statement from Defendant CASSITTO soliciting employees of Defendant PIER A to train to work banquets.

31. Defendant CASSITTO denied Plaintiff's request to train and begin working banquets, citing banquet positions as only appropriate for Servers.

32. However, Plaintiff had significant experience as a Server at other restaurants, and would have been perfectly capable of performing banquet work.

33. Upon information and belief, banquet work at Harbor House paid at a higher rate than restaurant work, with a potential for higher tips.

34. Upon information and belief, throughout the year of 2016 and into early 2017, nearly all banquet work at the Harbor House was performed by white employees, the majority of whom are under the age of forty (40).

35. Upon information and belief, Defendant CASSITTO denied Plaintiff permission to work banquets because of Plaintiff's race and age.

36. In or about the Summer of 2016, Plaintiff witnessed Defendant CASSITTO humiliating a black busser who glanced at a television while waiting for a party to depart from a table, saying, "People like you shouldn't work here, being lazy...." Plaintiff understood Defendant CASSITTO's reference to "people like you" to mean black people, and that Defendant CASSITTO was stereotyping all black people as lazy.

37. During the Summer of 2016, "Rodney," a black employee who worked as a busser, requested a meal break from Defendant CASSITTO, and Defendant CASSITTO responded

to Rodney and a group of black employees, "You people can't eat right now." Plaintiff understood Defendant CASSITTO's reference to "you people" to mean the black employees, as a separate group from the white employees.

38. Defendant CASSITTO routinely refused to allow Plaintiff to take a meal break anytime Plaintiff's shift started at 4:00 p.m., insisting that Plaintiff's shift was not a "double shift" and thus, that she was not eligible for a meal break.

39. However, Plaintiff observed that Defendant CASSITTO allowed white employees to take meal breaks when their shifts commenced at 4:00 p.m.

40. At the same time that Defendant CASSITTO was exceedingly strict with black employees regarding meal breaks, Defendant CASSITTO allowed her favored employees, who were all white, to take meal breaks anytime they wished; and furthermore, the favored white employees received higher quality food.

41. Upon information and belief, at all times material, there were no black managers employed by Defendant PIER A.

42. At all times material, there were very few black employees "on the floor"[1] of Defendant PIER A's restaurant.

43. On February 12, 2017, with no warning, Defendants abruptly informed Plaintiff that she was being terminated.  Specifically, Defendant CASSITTO told Plaintiff that Plaintiff's shifts would be cut back and that Plaintiff should begin searching for work elsewhere.

44. When Plaintiff inquired why her shifts were being cut back, Defendant CASSITTO told Plaintiff that Plaintiff was **"too old for the position,"** and that **"the position is for young people, like students**; not for a mom in [Plaintiff's] situation."

---

[1] "On the floor" refers to those employees who interact with customers, i.e., hosts, servers, food and drink runners, bartenders, and managers.

45.     While Plaintiff and Defendant CASSITTO were speaking, Mr. Malone walked in and joined the conversation.

46.     During the conversation, both Mr. Malone and Defendant CASSITTO assured Plaintiff that her termination was not related to Plaintiff's job performance.

47.     Mr. Malone and Defendant CASSITTO's added that Plaintiff's position was being eliminated.

48.     However, upon information and belief, within mere weeks of Plaintiff's termination, Defendants hired several Drink Runners to replace Plaintiff, and all such new hires were much younger than Plaintiff.

49.     On or about March 1, 2017, Plaintiff worked her last shift for Defendant PIER A.

50.     Plaintiff has been unlawfully discriminated against and terminated on the basis of her age, race, and/or color.

51.     Defendants' actions and conduct were intentional and aimed at harming Plaintiff.

52.     Plaintiff suffered a hostile work environment due to her race in the disparate treatment she was subjected to, as compared to her similarly-situated white co-workers.

53.     As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

54.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

55.     As a result of the above, Plaintiff has been damaged in an amount which exceeds the

jurisdictional limits of the Court.

56.     Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.   As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## UNDER FEDERAL LAW
## 42 U.S.C. SECTION 1981

57.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

58.     42 U.S.C. Section 1981 states in relevant part as follows:

    a.   Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

    b.   "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

59.     Plaintiff was discriminated against because of her race as provided under 42 U.S.C. Section 1981 and has suffered damages as set forth herein.

## AS A SECOND CAUSE OF ACTION
## UNDER TITLE VII
## DISCRIMINATION
## (AS TO DEFENDANT PIER A ONLY)

60.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

61.   This claim is authorized and instituted pursuant to the provisions of Title VII for relief based upon the unlawful employment practice of the above-named Defendants.  Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's a race [or] color.

62.   Defendant PIER A engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against and terminating Plaintiff because of her race and/or color.

### AS A THIRD CAUSE OF ACTION
### FOR DISCRIMINATION UNDER THE ADEA
### (AS TO DEFENDANT PIER A ONLY)

63.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

64.   This claim is authorized and instituted pursuant to the provisions of the Age Discrimination in Employment Act of 1967 ("ADEA"), as codified, 29 U.S.C. §§ 621-634, for relief based upon the unlawful employment practices of the above-named Defendant.

65.   Plaintiff complains of Defendant's violation of the ADEA's prohibition against discrimination in employment based, in whole or in part, upon an employee's age. Defendant engaged in unlawful employment practices prohibited by the ADEA by discriminating against and terminating Plaintiff because of her age.

66.   Further, Defendant's discrimination of Plaintiff due to age constitutes a willful violation of 29 U.S.C. § 623 and as such, Plaintiff is entitled to recover double damages.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYSHRL

67.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

68.  New York State Human Rights Law, Executive Law § 296 (1) provides that: "It shall be an unlawful discriminatory practice:  (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

69.  Defendants engaged in an unlawful discriminatory practice by discriminating against and terminating the Plaintiff because of her age, race, and/or color.

70.  As such Plaintiff has been damaged as set forth herein.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYCHRL

71.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

72.  The New York City Administrative Code § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

73.   Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(1)(a) by discriminating against and terminating Plaintiff because of her age, race, and/or color.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYCHRL

74.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

75.   The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

76.   Defendant CASSITTO engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory and unlawful conduct.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYCHRL

77.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

78.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

79.   The New York City Administrative Code § 8-107(13) provides that:

"Employer liability for discriminatory conduct by employee, agent or independent contractor.

11

a.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

   1.  the employee or agent exercised managerial or supervisory responsibility; or

   2.  the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

   3.  the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c.  An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct."

12

80.    Defendants violated the section cited herein as set forth.


## JURY DEMAND

81.    Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants:

A.    Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII, 42 U.S.C. § 1981, ADEA, The New York Executive Law, and the New York City Administrative Code; and that the Defendants discriminated against and terminated Plaintiff on the basis of her age, race and/or color;

B.    Ordering the Defendants to take steps necessary to prevent and remedy the employment discrimination identified above;

C.    Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiffs whole for any losses suffered as a result of such unlawful employment practice;

D.    Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

E.    Awarding Plaintiff punitive damages;

F.    Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

G.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

**WHEREFORE**, Plaintiff demand judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
        October 6, 2017

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

By:   _____

        Steven Fingerhut, Esq.
        *Attorneys for Plaintiff*
        45 Broadway, Suite 620
        New York, New York 10004
        (212) 248-7431
        sfingerhut@tpglaws.com